## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

|  |  |
|---|---|
| Kevin Lay, | |
| *Plaintiff,* | Case No. 1:25-cv-00152 |
| v. | |
| TX Royal Palace LLC, Zhong Li, DEX Investments, Helena Pavel, and John Does 1 – 20, | **Complaint** |
| *Defendants.* | |

Plaintiff Kevin Lay hereby sues TX Royal Palace LLC, Zhong Li, DEX Investments, Helena Pavel, and John Does 1 – 20 (collectively, the "Defendants"). In support, he alleges as follows.

### I.    Preliminary Statement

1.    Our country is in the midst of a crypto-fraud crisis. Foreign criminal organizations have stolen billions of dollars from hardworking Americans in what are known as "pig-butchering scams"—and are continuing to do so even as we speak.

2.    Pig-butchering scams vary in their particulars, but in outline they are all the same. The scammers begin by initiating contact with and building trust with the victim, using diabolical psychological techniques to

lower their target's defenses. They then convince the victim to "invest" using a realistic-looking online investment or cryptocurrency-trading platform. The victim deposits money via cryptocurrency or wire transfer and, over time, profits appear to grow. But when the victim tries to withdraw, problems emerge. The scammers demand more money in 'taxes' or 'fees' to 'unlock' the victim's account. Desperate for their money back, victims often comply. When it finally becomes clear that the whole enterprise is a sham, it is too late. The scammers disappear with victim's money, and cut off contact.

3.    Tens of thousands of hardworking Americans have lost their life savings to these scams. Recent literature indicates that pig-butchering organizations have stolen more than $75 billion from victims worldwide since 2020. The FBI reports that Americans lost more than $5 billion to pig-butchering scams in 2023 alone.

4.    This is an action by a victim of one such  scam, Kevin Lay. The Defendants tricked Mr. Lay into investing on a platform that turned out to be a scam, and in so doing stole $3,643,188.71 of his savings. Mr. Lay has now been "slaughtered," in the scammers' parlance, and his money spirited away to foreign bank accounts and crypto wallets.

5.    This action and coordination with law enforcement are Mr. Lay's only hopes for recovery. In this suit, he seeks the return of the assets stolen from Mr. Lay and additional damages and equitable relief described below.

## II.    Parties

6.    Plaintiff Kevin Lay is an individual. Mr. Lay is a resident of Henderson, Nevada.

7.    TX Royal Palace LLC is a limited liability company incorporated in the state of Texas. Its headquarters and situs of organization are located in the state of Texas.

8.    Zhong Li is an individual of unknown citizenship currently residing in California. He is the manager and sole incorporator of TX Royal Palace LLC.

9.    DEX Investments is a fraudulent cryptocurrency and commodity futures investment platform. Its headquarters and situs of organization (if any) are presently unknown.

10.    Helena Pavel is an individual of unknown citizenship whose present whereabouts are unknown.

11.    Defendants John Doe 1 – 20 are as-yet unidentified individuals, business entities, and/or unincorporated associations. These persons are DEX's, Pavel's, TX Royal Palace's, and Li's co-conspirators.

## III.    Jurisdiction & Venue

12.    This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Accordingly, this Court has federal-question jurisdiction.

13.    Each of the Defendants are subject to the personal jurisdiction of this Court because they direct business activities towards and conduct

business with consumers throughout the United States, including within the State of Texas and this district through at least one fraudulent website and mobile application accessible from Texas. Alternatively, the Defendants are subject to personal jurisdiction in this district because (i) they are not subject to jurisdiction in any state's court of general jurisdiction and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3), which provides that a foreign defendant may be sued in any judicial district.

### IV.    Allegations

15.    In July 2024, Helena Pavel contacted Mr. Lay via an unsolicited phone call, claiming that they had met several years ago at a restaurant in New York City. Mr. Lay did not recall meeting Pavel, but the two struck up a connection and began messaging regularly.

16.    Pavel eventually told Mr. Lay about her success investing in gold futures and introduced Mr. Lay to a platform called DEX Investments. Pavel told Mr. Lay that she knew how to make profits using DEX and offered to teach Mr. Lay how to do the same. Pavel encouraged Mr. Lay to make a DEX account, which he soon did.

17.    Over the next several months, Pavel 'trained' Mr. Lay in trading and investing in gold futures using the DEX platform. When Mr. Lay was ready to make a deposit on DEX, the platform provided Mr. Lay with asset-

transfer instructions via the platform's customer-service chat or on its "deposit" page, or via Pavel herserlf.

18.     On one such occasion, Pavel and the DEX platform instructed Mr. Lay to transfer assets via wire transfer into a Citibank bank account owned by TX Royal Palace LLC, whose routing and account information were provided directly by Pavel. A ledger showing Mr. Lay's wire transfers to Defendants is set out as Attachment 1 to this Complaint.

19.     Mr. Lay completed the transactions as instructed. Each time, the amount of the funds he 'deposited' would then be reflected in his transaction history and account balance on the DEX platform. Over time, he sent assets to DEX via wire transfer with a dollar-denominated value of $3,643,188.71.

20.     Mr. Lay's balance on the DEX platform appeared to grow rapidly—eventually showing that he had earned profits of more than $800,000 in less than two months. But when he attempted to withdraw his funds, DEX informed Mr. Lay that he could not do so. Mr. Lay soon realized that he had been scammed.

21.     The DEX platform was never a "trading platform" of any sort. It was a simulacrum of a trading platform where no actual trading or investment ever occurred. The account balances, the purported profits, and the transaction history displayed were real only in the sense that they reflected the monies Mr. Lay sent to the Defendants. And this was simply to

ensure that the platform appeared to be functioning. The assets Mr. Lay transferred to the Defendants were never 'deposited' on DEX. They were never used for cryptocurrency trading. They were simply stolen.

22.    Mr. Lay was not the only victim of the DEX scam. At least dozens of other persons were scammed by the Defendants in a period extending over one year.

## V.    Causes of Action

23.    Mr. Lay brings the following causes of action against the Defendants. The allegations set out above are incorporated into each of the causes of action that follow as if fully restated therein.

### Count One
### Racketeering in Violation of 18 U.S.C. § 1964(c)
### Against All Defendants

24.    TX Royal Palace LLC, Zhong Li, DEX Investments, Helena Pavel, and John Does 1 – 20 (collectively, the "Defendants") constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they are a group of individuals and legal entities associated in fact. Their enterprise is referred to herein as the "Pig Butchering Enterprise."

25.    The Pig Butchering Enterprise engaged in numerous acts of wire fraud in violation of 18 U.S.C. § 1343, as described above. They did so using their online platform and digital communications with Mr. Lay and others. Mr. Lay relied on the Defendants' fraudulent statements to his detriment.

26.    The Defendants shared the common purpose of defrauding and stealing from Mr. Lay and other victims and thereby converting and exercising dominion over their assets.

27.    The Defendants are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c). Each of them individually conducted, participated in, engaged in, and operated and managed the affairs of the Pig Butchering Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of wire fraud described above.

28.    All the acts of racketeering activity described above were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). The Defendants' common purpose was to defraud Mr. Lay and other victims and convert and exercise dominion and control over those victims' assets. Each Defendant, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission.

29.    The Pig Butchering Enterprise was of sufficient longevity for its members to carry out their purposes on a large scale. All of the acts of racketeering described above, were continuous so as to form a pattern of racketeering activity in that the Defendants have engaged in the predicate acts for a substantial period of time exceeding one year. The Pig Butchering Enterprise successfully defrauded at least dozens of persons and converted

millions of dollars worth of its victims' assets, including Mr. Lay's. To the extent the Pig Butchering Enterprise's activities have ceased or cease while this litigation is pending, these acts posed threat of indefinite duration at the time they were committed and will have stopped only because they were fortuitously interrupted by events beyond the Defendants' control.

30.    As a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Mr. Lay was injured in his business and property within the meaning of 18 U.S.C. § 1964(c).  The Defendants stole Mr. Lay's savings and thereby caused Mr. Lay to suffer deprivations and extreme mental and emotional distress. he is, therefore, entitled to recover threefold the damages sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## Count II
## Conversion
## Against All Defendants

31.    As more fully alleged above, the Defendants misappropriated Mr. Lay's assets.

32.    The Defendants converted Mr. Lay's assets to their own use or the use of others not entitled to them. They have exercised dominion and control over those assets to Mr. Lay's exclusion and detriment.

33.    Mr. Lay has suffered damages as a direct and proximate result of Defendants' conversion.

## Count III
## Fraud
## Against All Defendants

34.    To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.

35.    As alleged above, the Defendants made numerous false representations to Mr. Lay, including that theirs was a legitimate trading platform through which Mr. Lay might make a return on his assets. They did so with knowledge of the falsity of these statements and with actual intent to induce Mr. Lay to rely on their statements to his detriment, which he did.

### VI.    Jury Demand

36.    Plaintiff demands a trial by jury on all claims so triable.

### VII.    Relief Sought

37.    Mr. Lay requests that judgment be entered against each of the Defendants on each of the causes of action set out above. He seeks relief as follows:

　　　　　a.    Imposition of a constructive trust over his stolen assets and return of those assets to his possession;

　　　　　b.    Monetary damages;

　　　　　c.    Statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

　　　　　d.    Punitive damages;

e.  Costs, including reasonable attorneys' fees under 18 U.S.C. § 1964(c);

f.  Pre- and post-judgment interest;

g.  Injunctive and equitable relief insofar as required to preserve assets for recovery, halt the Defendants' unlawful acts, and otherwise enable the exercise of the Court's powers and effecutate its orders;

h.  Other relief as the Court deems just and proper.

Dated:  March 28, 2025                    Respectfully submitted,

                                           THE HODA LAW FIRM, PLLC


Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
12333 Sowden Road, Suite B
PMB 51811
Houston, TX 77080
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorney for Plaintiff*

## Attachment 1 – Plaintiff's Wire Transfers to Defendants

| Date | Currency | Amount | Recipient | Receiving Institution |
|---|---|---|---|---|
| 8/7/2024 | USD | $50,000.00 | TX Royal Palace, LLC | Citibank |
| 9/11/2024 | USD | $475,000.00 | HK Xinyue Trading Co Ltd | CITIC Bank |
| 9/16/2024 | USD | $475,000.00 | HK Xinyue Trading Co Ltd | CITIC Bank |
| 10/1/2024 | USD | $750,000.00 | PT Digital Bersama Bersatu | Bank OCBC |
| 10/7/2024 | USD | $750,000.00 | PT Digital Bersama Bersatu | Bank OCBC |
| 10/8/2024 | USD | $750,000.00 | PT Digital Bersama Bersatu | Bank OCBC |
| 11/25/2024 | USD | $393,188.71 | Indilabs Medicare Sukses | Bank OCBC |
| N/A | USD | N/A | PT Djaya Kabel Sukses | Bank OCBC |